MONACO, J.
This is a troubling case. In the final analysis we conclude that trial counsel for the appellees, Dale R. Hightower, stepped over the behavioral bounds so frequently during the three-day trial of this case that a reversal is required. That is to say that while each individual defalcation of Mr. Hightower’s might not justify reversal, their totality surpasses the critical mass that compels us to order a new trial.
The appellant, Lucas Irizarry, was injured in an accident with a truck owned by appellee, Waste Management, Inc. of Florida, and driven by appellee, Kenneth O. Moore. The accident was a low impact event, but was, according to the jury, 100% due to the negligence of the appellees. Thus, the trial was basically about damages.
Mr. Irizarry asserted that he injured his neck in the accident, and as a result was required to undergo a three-level cervical fusion. The evidence reflects that he incurred about $112,000 in medical expenses. The defense was essentially that Mr. Iri-zarry had preexisting injuries or conditions, none of which were exacerbated by the accident, and that accordingly, he incurred little or no damages from this minor traffic incident. The jury returned a verdict in Mr. Irizarry’s favor of $56,000 for past medical expenses, found no permanent injury, and awarded no damages for pain and suffering past or future, and no future medical expenses.
So what was it that compels us to reverse? There were many incidents during the trial that lead us to order a new trial, and it would probably serve no useful purpose to delineate each of them in great *1071 detail. An examination of a few aspects of Mr. Hightower’s behavior during the trial, however, will provide an adequate illustration.
For reasons that are hard to explain, Mr. Hightower, a lawyer who claims to have tried over two hundred cases, began during his voir dire of the jury using the terms “guilty” and “innocent” in describing Mr. Irizarry’s burden of proving his negligence cause of action. A flavor of the problem can be sensed in one particular exchange. Mr. Hightower began by saying:
[Wje’re a Defendant in a case, but I think Plaintiffs counsel did a good job talking about their burden of proof, and I know you’ve heard this phrase, but I want to make sure that everybody understand it and agrees with it. That that is, as a defendant in a case, whether it’s a criminal case or a civil case, we’re presumed innocent until proven guilty. Everybody understand that okay?
[Emphasis added]. After the obvious objection was sustained, counsel continued undaunted:
That’s a phrase in a criminal case, but they have to prove their case against us and if they have to prove their case, I’m just saying, just because we’re here doesn’t mean we did anything wrong. So whether you’re presumed innocent or not, just because we’re here—
[Emphasis added]. Although the objection was again sustained, counsel still persisted, announcing to the jury:[1]
I just want to reiterate just because we’re a Defendant in the case, doesn’t mean that we did anything wrong. Does everybody understand that? Okay. The Plaintiff has to prove that we’re liable or guilty of something before we can be found — that’s why we’re going to trial.
Later that day, but still during voir dire, appellees’ counsel then began a series of comments suggesting that Mr. Irizarry was seeking to make a fraudulent claim.[2] He began by asking:
MR. HIGHTOWER: Has anyone had a situation whether they knew someone, let’s say, was in a car accident, but they had had damage to their car before this car accident — either damage to their bumper or their engine wasn’t running right or their transmission wasn’t running right — and they tried to claim it in the car accident when it didn’t really happen in the car accident, but it happened before?
When appellant’s counsel, Mr. Mitnik, objected, the following dialogue occurred:
MR. MITNIK: And what about injecting an issue of fraud into the case through your question.
MR. HIGHTOWER: I said your client was guilty of fraud.
MR. MITNIK: Do you have any evidence of any fraud?
MR. HIGHTOWER: Huh?
MR. MITNIK: Do you have any evidence of any fraud?
MR. HIGHTOWER: I’m not going to tell you. If I do, you’ll find out.
He continued in that same vein, asking finally:
Does everyone understand that it’s fair and reasonable compensation and it’s *1072 not like, you know, Florida lottery money or something like that.[3]
More objections and a motion for a mistrial ensued. No evidence of fraud was ever adduced during the course of the trial.
The problematic behavior continued in the same style during the remainder of the case. Once again, without attempting to catalogue all of the questionable tactics, we have found particular difficulty with the following action of Mr. Hightower:
a. Failure to deliver an updated CME prior to trial in violation of the pretrial order;
b. Referencing in opening statement that a medical expert had reviewed additional medical tests when counsel was fully aware that the expert was to be limited to the information contained in his earlier report;
c. Advising the jury during opening statement that appellant’s law firm had paid a medical expert to examine Mr. Iri-zarry (i.e., to perform a CME); that later the doctor operated on appellant; and that the jury should take that into account “in deciding whether or not to pay the medical bill” for the surgery;
d. Failing to timely provide changes to a defense radiologist’s report to appellant’s counsel (the doctor had been provided additional materials since his report was prepared);
e. Attempting to interject information from the police report of the accident, in violation of section 316.066, Florida Statutes (2009);[4]
f.Unnecessarily interrupting appellant’s counsel during final argument in the presence of the jury in an effort to suggest that counsel was taking too much time, even though there was a specific determination by the trial judge governing time already in place[5].
As noted, this list is not intended to be exhaustive. Rather, it is intended to provide a glimpse into the conduct of the trial by Mr. Hightower. Frankly, at the end of the day, because of Mr. Hightower’s egregious behavior, we have no confidence that the parties received a fair trial of the issues. See Philippon v. Shreffler, 38 So.3d 704, 709 (Fla. 4th DCA), review denied, 47 So.3d 1290 (Fla.2010); Samuels v. Torres, 29 So.3d 1193 (Fla. 5th DCA 2010); Maksad v. Kaskel, 832 So.2d 788, 793 (Fla. 4th DCA 2002). Although the appellant moved for a new trial based on the pervasive effect of opposing counsel’s conduct, the motion was denied by the trial court. We conclude that the trial judge abused her discretion in doing so. See Manhardt v. Tamton, 832 So.2d 129, 132 (Fla. 2d DCA 2002).[6]
Unfortunately, this is not the first time Mr. Hightower’s trial behavior has been called into question. See Johnnides v. Amoco Oil Co., Inc., 778 So.2d 443 (Fla. 3d DCA 2001); see also The Florida Bar v. Hightower, 814 So.2d 442 (Fla.2002). We are, thus, less inclined to lay off the problems we see to simple overzealousness. We suspect that the best way to put a stop to this kind of bad trial behavior is to grant a new trial when the misconduct reaches the appropriate level. We choose to do so in the present case, but reverse *1073 only on the issue of damages. Accordingly, we affirm the judgment as to liability, but reverse and remand for a new trial on the issue of damages. We trust that civility will be more in evidence at that proceeding.
REVERSED and REMANDED.
JACOBUS, J., concurs.
SAWAYA, J., concurs in result only.

. "A willful disregard of prior court rulings can constitute a direct obstruction of the court.” See State ex rel. Garlovsky v. Eastmoore, 393 So.2d 567 (Fla. 5th DCA 1981).

. See Johnnides v. Amoco Oil Co., Inc., 778 So.2d 443 (Fla. 3d DCA 2001).

. See Murphy v. Int’l Robotic Sys., Inc., 766 So.2d 1010 (Fla.2000); Murphy v. Int’l Robotics Sys. Inc., 710 So.2d 587, 588 (Fla. 4th DCA 1998).

. See also Thomas v. Gottlieb, 520 So.2d 622 (Fla. 4th DCA 1988).

. The trial court characterized these tactics as "unfair.”

. We note that the appellant did not seek sanctions against Mr. Hightower personally.