JACOBUS, J.
Kara Singleton Adams, the defendant below, appeals from the final judgment entered in favor of Laura Barkman and Randall Hobbs, the plaintiffs below, after a jury returned a verdict awarding Barkman and Hobbs a total of $1.3 million in damages. On appeal, Adams contends that the trial court abused its discretion by: (1) granting the plaintiffs’ motion for mistrial based upon the improper conduct of defense counsel, Mr. Fischer, (2) striking Adams’ pleadings without considering all the Kozel[1] factors in order to properly evaluate whether a lesser sanction might be appropriate, and (3) bifurcating the case between negligence and causation and damages. We find no error and affirm.
This case arises out of a motor vehicle accident in which an SUV, driven by Adams, collided with a motorcycle, operated by Hobbs.[2] Following the accident, Hobbs and Barkman initiated a negligence action against Adams. Hobbs contended that the accident occurred when Adams made a sudden lane change into Hobbs’ lane, causing the front of his motorcycle to be struck by the rear of Adams’ SUV. Adams, on the other hand, contended that she was operating the motor vehicle in a single lane, that she did not make any sudden lane changes, and that Hobbs, while operating his motorcycle, rear-ended her SUV. Needless to say, the liability issue was hotly contested in this case.
Prior to trial, the trial court held several lengthy hearings on the various pretrial motions filed by the parties. At the first hearing, the trial court addressed Adams’ motion to bifurcate the trial as to the issues of liability and damages, the plaintiffs’ motion to separate their claims, and the plaintiffs’ motions in limine seeking to exclude the accident report prepared by an investigating Florida Highway Patrol trooper and certain alcohol-related evidence.[3] After hearing arguments from both parties, the trial court determined that plaintiffs’ motions in limine were well-taken and entered an order stating that the defense was not to mention Barkman’s alcohol consumption or the contents of the trooper’s accident report, which included the Trooper’s opinion on the direction Adams’ vehicle was traveling at the time of the accident.[4] However, the court denied *1023 both the motion to separate and the motion to bifurcate. After the hearing, the parties stipulated to bifurcating the trial between negligence and “causation and damages.” Ultimately, the trial court accepted the stipulation and a jury trial was set to determine the negligence issues of the parties.
At the next hearing, the trial court addressed the plaintiffs’ third motion in li-mine, which sought to exclude from the first phase of the trial evidence that they were not wearing helmets at the time of the accident. After hearing argument from the parties, the trial court noted that the issue to be tried in the first phase, based on the parties’ stipulation, was whether Adams’ negligence caused the accident, not whether Adams’ negligence caused the plaintiffs’ injuries. Concluding that the failure to wear a helmet had nothing to do with causing the accident, the trial court granted the plaintiffs’ motion and ordered that the helmet issue could not be raised during the first phase of the trial.
After the court denied Adams’ motion for rehearing, requesting that the trial court reconsider its rulings on the motions in limine, the case proceeded to trial. From the outset of the proceedings, Mr. Fischer appeared to be attempting to interject issues previously excluded by the court’s rulings on the motions in limine. First, during voir dire, Mr. Fischer asked the members of the venire whether they rode a bicycle, and when one prospective juror answered in the affirmative, Mr. Fischer asked him if he wore a helmet while riding. There was no objection by the plaintiffs to the question, and the jury was subsequently selected and sworn. Next, during cross-examination of the plaintiffs’ first witness, Mr. Bartoszewicz, Mr. Fischer asked him where he and the plaintiffs had been on the day of the accident and elicited testimony that they had been at Dale’s Ales for several hours celebrating his birthday. Further, when Mr. Bartoszewicz testified that he had taken his motorcycle home after the accident, Mr. Fischer asked him if had gone home to get his helmet. The most egregious violation of the court’s rulings on the motions in limine came when the trooper testified. Despite the fact that the court had advised the trooper, moments before he testified, that he was not to give his opinion as to the direction that Adams’ vehicle was traveling, Mr. Fischer asked the trooper if the evidence he described at the scene was consistent with Adams’ vehicle going straight ahead. It was at that time that the plaintiffs ultimately objected and moved for a mistrial. Because of Mr. Fischer’s conduct, the trial court granted the motion for mistrial and indicated that it was going to impose sanctions.
At a later date, the court held an eviden-tiary hearing on sanctions. During the hearing, Mr. Fischer insisted on testifying and the court permitted him to do so. Mr. Fischer indicated that he believed he had done nothing wrong and his questions were invited by the testimony elicited by the plaintiffs on direct examination. After hearing the testimony and reviewing the file, the court made a lengthy oral finding which was transcribed and attached to the order imposing sanctions. The trial judge,[5] who had many years of experience on the bench, pointed out that he had never been involved in a case like this. The judge cited, among other things, the length of the in limine hearings, Mr. Fischer’s repeated attempts to contest his rulings, and several pretrial discovery issues in which Mr. Fischer may have conducted *1024 himself inappropriately but on which the trial judge had given him the benefit of the doubt. At the end of the day, the trial judge felt, after reviewing the factors to be considered in imposing sanctions as set out in Kozel v. Ostendorf, 629 So.2d 817 (Fla.1993) and Ham v. Dunmire, 891 So.2d 492 (Fla.2004), that the sanction appropriate in this matter was to strike Adams’ pleadings and have a trial on damages only.
Because striking a party’s pleadings is a severe sanction, it is to be used sparingly. Mercer v. Raine, 443 So.2d 944, 946 (Fla.1983) (citing Hart v. Weaver, 364 So.2d 524 (Fla. 2d DCA 1978)). Circumstances in which it is justified include where a litigant or lawyer’s behavior indicates “[a] deliberate and contumacious disregard of the court’s authority!,] ... bad faith, willful disregard or gross indifference to an order of the court, or conduct which evinces deliberate callousness.” Id. We review a trial court’s decision to strike a party’s pleadings as a sanction for an abuse of discretion. See Houser v. Cnty. of Volusia, 25 So.3d 75 (Fla. 5th DCA 2009).
In this case, the issues giving rise to the sanction were not pretrial discovery violations. Rather, these were violations of the court’s rulings that involved conscious, intentional acts by Mr. Fischer during the course of the trial. After reviewing the record, we find that the trial judge properly considered the Kozel factors, gave Mr. Fischer every opportunity to provide a valid explanation for his conduct, and appropriately struck Adams’ pleadings as a sanction.
We note that the conduct exhibited by Mr. Fischer is a continuing problem with these types of cases. Although the Southern Reporter is replete with cases where appellate courts have granted new trials based on similar behavior, counsel for both plaintiffs and defendants continue to make improper arguments and violate orders of the court. In the last two years, this court has admonished other lawyers regarding such conduct on at least three occasions. See Irizarry v. Moore, 84 So.3d 1069 (Fla. 5th DCA 2012); Jackson v. Pena, 58 So.3d 303 (Fla. 5th DCA 2011); Samuels v. Torres, 29 So.3d 1193 (Fla. 5th DCA 2010). While it is suggested that these cases should be tried on the merits and not attorney shenanigans, the threat of an admonishment and a new trial appears to be of no avail. By sanctioning a party as Judge Dickey did in this ease, maybe attorneys will get the message to either change their tactics or clients will stop hiring them. At any rate, attorneys need to constantly review the Code of Professional Responsibility and conduct themselves in a professional manner so that every party to the cause receives a fair trial.
AFFIRMED.
PALMER and COHEN, JJ., concur.

. Kozel v. Ostendorf, 629 So.2d 817 (Fla.1993).

. Barkman was a passenger on the motorcycle at the time of the accident.

. The plaintiffs sought to exclude, among other things, evidence of their stop at Dale’s Ales, a pub in DeLand, prior to the accident and Barkman’s alleged blood alcohol content at the time of the accident. The plaintiffs claimed that the probative value of this evidence was outweighed by the danger of unfair prejudice because while there was evidence that Barkman, the passenger on the motorcycle, had several drinks and became intoxicated prior to the accident, there was no evidence that Hobbs, the operator of the motorcycle, had anything to drink or was under the influence of alcohol at the time of the accident.

.The court determined that the trooper was not competent to render such an opinion and concluded that his testimony at trial would be restricted to what he actually saw after he arrived on the accident scene.

. The Honorable Alan A. Dickey presided over the first phase of the trial and the sanction hearing. Judge Pleus presided over the damages trial from which this appeal was taken.